**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| SANDY J. WILLIAMS, | ) | CASE NO.  5:08-cv-2879 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELL |
| v | ) | |
| | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | | |

Claimant, Sandy J. Williams ("Williams"), challenges the final decision of the

Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying

Williams's application for Supplemental Security Income ("SSI") under Title XVI of the

Social Security Act ("Act"), 42 U.S.C. § 423 and 42 U.S.C. § 1381(a).  This Court has

jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United

States Magistrate Judge pursuant to the consent of the parties entered under the

authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is

AFFIRMED.

**I.  Procedural History**

Williams filed his application for SSI on January 10, 2006, alleging disability

beginning January 1, 2005.   His application was denied initially and upon

reconsideration.  Williams timely requested an administrative hearing.

Administrative Law Judge ("ALJ"), Dennis James LeBlanc, held a hearing on July 29, 2008, at which Williams, who was represented by counsel, and Nancy J. Borgeson, vocational expert ("VE") testified.  The ALJ issued a decision on August 13, 2008 in which he determined that Williams was not disabled.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review. Williams filed an appeal to this Court.

On appeal, Williams claims the ALJ erred by: (1) failing to consider the record as a whole; and (2) failing to find substantial evidence that Williams met a Listing. The Commissioner disputes Williams' claims.

## II.  Evidence

### A.  Personal and Vocational Evidence

Williams was born on May 30,1945.  Transcript ("Tr.") 58.  He was 63 years old at the time of the hearing.  Williams completed school through the eleventh grade.  (Tr. 180).  His past relevant work includes general laborer/yard man.  (Tr. 66-67, 182-185). Williams was convicted of murder in 1969 and served 29 years of a life sentence.  After being released, Williams was convicted of drug trafficking and possession and was sentenced to four years incarceration.  Williams was released in 2004.  (Tr. 137, 167).

### B.  Medical Evidence

On March 2, 2006, Williams presented to Dr. Frederick G. Leidal, Psy.D. for a psychological consultive examination.  (Tr. 136).  Dr. Leidal opined that Williams's intelligence appeared to be in the mildly mentally retarded range of intellectual functioning.  Dr. Leidal stated that this appeared to be a low estimate because

2

Williams's low effort, poor motivation, and visual impairment affected his ability to perform on the IQ test.  Dr. Leidal did not diagnose Williams as mildly mentally retarded; however, he stated that if collateral evidence could be obtained sustaining mental retardation prior to age 18, the diagnosis should be amended accordingly.  (Tr. 142).

Dr. Leidal made the following findings regarding Williams's work related abilities. Williams is moderately impaired in his ability to: (1) relate to others in an appropriate manner; (2) accept criticism or instruction and respond to instruction in a work setting; (3) respond to changes with reasonable flexibility; (4) sustain an ordinary routine without supervision or prompting; and (5) complete a task at pace.  He is slightly impaired in his ability to: (1) work near others without being overly distracted by them and remain focused; and (2) perform activities within a schedule, maintain attendance, and be punctual.  Williams is moderately to markedly impaired in his ability to: (1) understand, comprehend, and carry out more complex levels of instruction and direction; and (2) maintain employment, adapt to the work environment, tolerate the stressors of the work environment, and complete a normal workday.  Williams's ability to understand and carry out more detailed instructions is slightly to moderately impaired.   Williams's persistence in completing routine daily tasks or work related tasks is likely to be moderately impaired.  Dr. Leidal opined that from a psychological perspective, Williams's ability to actually obtain some kind of productive employment without assistance is moderately impaired.  (Tr. 142-143).

Dr. Leidal diagnosed Williams with antisocial personality disorder and borderline intellectual functioning.  He assigned Williams a Global Assessment Functioning

3

("GAF") score of 50.[1]  (Tr. 141).

On March 13, 2006, Todd Finnerty, medical consultant, completed a Psychiatric Review Technique of Williams.  (Tr. 147-160).  Finnerty opined that Williams suffered from an organic mental disorder and a personality disorder.  (Tr. 147).  Finnerty found that Williams has moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace.  (Tr. 157).

On March 13, 2006, Finnerty completed a Mental Residual Functional Capacity Assessment of Williams.  (Tr. 161-164).  Finnerty found Williams is moderately limited in his ability to:  (1) carry out detailed instructions; (2) work in coordination with or proximity to others without being distracted by them; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (4) interact appropriately with the general public; and (5) accept instruction and respond appropriately to criticism from superiors.  (Tr. 161-162).

Williams presented to Manzoor E. Elahi, M.D. at  Portage Path Behavioral Health ("Portage Path") on December 12, 2006.  (Tr. 167-169).  Williams was diagnosed with major depressive disorder, single episode; learning disorder, NOS; rule out adjustment disorder with mixed anxiety and depressed mood.  He was assigned a current GAF score of 41-50.  (Tr. 168).  Dr. Elahi recommended that Williams continue taking

---

[1]A GAF score between 41 and 50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning.  A person who scores in this range may have suicidal ideation, severe obsessional rituals, no friends, and may be unable to keep a job.  *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. revised, 2000).

4

Seroquel and Lexapro.  He also recommended follow up in four weeks.  (Tr. 169).

A progress note dated May 16, 2007 states that Williams's thoughts are clear, he is alert and oriented, and his speech is coherent.  A July 16, 2007 progress note states that Williams's medications are helping.  His thoughts are very clear and rational, and his affect is appropriate.  (Tr. 166).

On August 10, 2007, Judy Uhlar, LISW and Ki-Moon Hong, M.D., both of Portage Path, sent a letter to Williams's counsel in which they stated that Williams's current working diagnosis is major depression, with psychotic features.  They stated that Williams is currently prescribed Seroquel and Lexapro and is medication compliant.  Williams sees Dr. Hong every other month, but he does not participate in counseling.  Uhler and Hong opined that Williams' symptoms are chronic and disabling.  (Tr. 165).

### C. Hearing Testimony

Williams testified that he was in a special education program in school.  He stated that he completed the eleventh grade but he was just "passed on".  (Tr. 180).  He can read a little but does not understand what he reads. He reads the sports page in the newspaper and follows sports, but he was unable to obtain a driver's license because he could not pass the test.  (Tr. 180-181).  Williams can write but has difficulty with math.  He stated he can count the change he receives at a store.  (Tr. 181-182).

Williams worked as a yard man cleaning the yard at a fence company.  He worked by himself because he does not like to be around people.  He did not install fences because he could not take the measurements.  (Tr. 182-183).  Williams also worked as a landscaper.  He was fired from that job because he did not get along with others, and because he could not perform the job properly.  (Tr. 184-185).

5

Williams lives in a house with his sister, who has had a couple of strokes. (Tr. 186). He vacuums and does yard work. His sister has a nurse who does many of the other chores. Williams cooks for himself. (Tr. 186-188).

Williams does not socialize beyond his family and has no hobbies. He watches sports on television. He does not know how to use a computer. (Tr. 188-189).

Williams feels depressed all the time. He takes medication, which he feels works "pretty good". He does not drink or use street drugs. (Tr. 189-190).

### III.  Standard for Disability

A claimant is entitled to receive benefits under the Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. § 416.1100 and 20 C.F.R. § 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least

6

twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. § 404.1520(d) and 20 C.F.R. §416.920(d).  Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled.  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV.  Summary of Commissioner's Decision

In relevant part, the ALJ made the following findings:

1.  The claimant has not engaged in substantial gainful activity since January 10, 2006, the application date...;

2.  The claimant has the following severe impairments: personality disorder, depressive disorder, and borderline intellectual functioning...;

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1...;

4.  [T]he claimant has the residual functional capacity to understand, remember and carry out simple instructions with occasional interaction with supervisors, coworkers and the general public.

5.  The claimant is capable of performing past relevant work as a general laborer/yard man.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity...; and

6.  The claimant has not been under a disability as defined in the Social Security Act since January 10, 2006...,the date the application was filed.

(Tr. 10-12, 17-19).

## V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied.  *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

## VI.  Analysis

### A. The ALJ Properly Considered the Record as a Whole

Williams' fist argument is titled, "The ALJ failed to consider the record as a whole."  (Plaintiff's Brief on the Merits ("Plaintiff's Brief") p. 9).  Under this heading, Williams raises a number of unrelated arguments which essentially challenge the sufficiency of the evidence supporting the ALJ's decision.  Each of Williams' arguments is without merit.

First, Williams argues that the ALJ misunderstood his testimony regarding the extent to which Williams cooked, followed sports, and rode the bus.  (Plaintiff's Brief p. 10).  Williams argues that he, "microwaves for himself...but he never actually described

8

cooking for himself." (Plaintiff's Brief p.10).  Williams testified as follows:

> Q: Do you do any cooking
> A: Yeah, I do my own.
> Q: Well, what type of things to you cook?
> A: I usually might cook me a salmon or some broccoli and stuff like that.
> Q: Do you microwave food?
> A: Yeah.

 (Tr. 187).

This testimony is ambiguous as to the method by which Williams cooks for

himself.  However, it is clear that Williams cooks.

Williams also argues that the ALJ erred in finding that Williams followed sports

because Williams testified that he only knew the name of one Cleveland Indians player.

(Plaintiff's Brief p. 10).  Again, the testimony does not support Williams' argument.

> Q. What parts of the newspaper [do you read]?
> A. Sports.
> Q. Do you keep up with any of the sports teams?
> A. Some of them, yeah.

(Tr. 181).

> Q. Do you watch television?
> A. Yes.
> Q. What type of shows do you watch?
> A. I don't watch nothing but sports.

(Tr. 188).

Williams also argues that the ALJ erred in finding Williams rode the bus.

Williams is correct.

> Q. Do you ride the bus or how do you get around?
> A. No, I don't get on no bus.
> Q. What's that?
> A. I walk. I don't get on no bus.

9

(Tr. 189).  Although Williams correctly identifies this inconsistency, he has failed to establish its relevance or that it is anything beyond harmless error.  Accordingly, Williams' argument that the ALJ misunderstood his testimony is without merit.

Williams next argues that the ALJ erred in failing to mention that Williams was rejected from military service as a 4F during the Viet Nam war.[2]  Williams argues that this is significant because, "Williams has never had any physical limitations and he's an average sized man, [therefore] his rejection was obviously for mental impairments." (Plaintiff's Brief p. 10).  Williams' argument is entirely speculative and without merit.

First, the record does not contain any evidence regarding the basis of a 4F rejection during the Viet Nam war.  Neither does it contain any evidence regarding Williams' size or his physical condition at the time.  Additionally, "it is well settled that... [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507, 508 (6th Cir.) citing *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir.).  Accordingly, this argument fails.

Williams next argues that, " [n]o one attempted to get Williams' school records or stated that they tried to obtain them."  (Plaintiff's Brief p. 10).  Williams argues that this is significant because the records may have helped establish that Williams is mildly mentally retarded.  If Williams believed that these records were relevant, it was incumbent upon him to present them.

> The claimant bears the ultimate burden to prove by sufficient evidence that [he] is entitled to disability benefits.... Only

---

[2]Actually, Williams testified that he was rejected an an F4.  (Tr. 182).

> under special circumstances, i.e. [sic] when a claimant is
> without counsel, is not capable of presenting an effective
> case, and is unfamiliar with hearing procedures, does an
> ALJ have a special heightened duty to develop the record.

*Trandafir v. Comm'r of Soc. Sec.*, 58 Fed. Appx. 113, 2003 WL 245341,** 2 (C.A.6 )

(citing *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986);

*Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983))

In this case, Williams was represented by counsel at the hearing before the ALJ.

Accordingly, the ALJ had no special duty to obtain these records.

Williams next argues that the evidence does not support the finding that Williams

can meet the mental demands of competitive work.  Williams argument is without merit.

The ALJ properly considered and weighed the evidence; and, as discussed below,

there is substantial evidence to support his decision.

The ALJ gave significant weight to the opinions of Dr. Leidal and Mr. Finnerty,

which he found to be consistent with Williams's level of functioning. (Tr. 19-20).   Dr.

Leidal reported that Williams obtained a verbal IQ score of 74, a performance IQ score

of 69, and a full scale IQ of 69; however, Dr Leidal opined that this was a low estimate

due to Williams's low effort, poor motivation, and visual impairments that affected his

ability to solve subsets comprising the performance IQ scores.  (Tr. 142).  Dr. Leidal

also opined that Williams's ability to maintain employment, adapt to the work

environment, tolerate the stressors of work, and complete a normal work day was

moderately to markedly impaired.

Mr. Finnerty opined that Williams's attention and concentration were not

impaired, and his ability to tolerate work stress was only moderately impaired.  He

11

opined that Williams had borderline intellectual functioning; and would be capable of SRT in a position with little contact with others and static changes. (Tr. 163).

The ALJ noted that the evidence concerning Williams's ability to function despite his impairments supports Dr. Leidal's and Mr. Finnerty's opinions.  In particular, the ALJ noted Williams's demonstrated the ability to perform work activity during the period of alleged disability.  (Tr. 20).

The ALJ gave less weight to the opinion of Dr. Ki-Moon Hong and social worker Uhler, which he found was not well supported.  Specifically, the ALJ noted that Hong and Uhler reported Williams's diagnosis as major depression with psychotic features; however, there is no mention of any psychotic features in any treatment notes. Additionally, the treatment notes indicated that Williams' thought processes were clear and rational, and his medication was helping.  In June 2008, Williams stated that the Lexapro calmed him down; and he was alert and friendly.  (Tr. 20).  The ALJ also found that Hong's and Uhler's opinion conflicted with the opinions of the state agency consultants, as well as Williams's actions in seeking employment and his other activities of daily living.  (Tr. 20).

Moreover, the ALJ properly rejected Hong's and Uhler's opinion that Williams's symptoms were disabling.  It is well established that issues of disability are reserved for the Commissioner.  *See* *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004) (The determination of disability is the prerogative of the Commissioner, not the treating physician.)

Finally, Williams argues that the VE's testimony supports a finding of disability. Williams states that:

> The VE testified when questioned about sustainability and the effect of the mental residual functional capacity form finding that Williams would have trouble completing a normal work day and work week without experiencing psychologically-based symptoms, that he, Williams, would have a problem sustaining work. He might obtain a job, but wouldn't be able to keep it.

(Plaintiff's Brief p. 11).  In fact, the following exchange took place between Williams's counsel and the VE.

> Q. If I would ...add that this person's ability to complete a routine daily task would be impaired, in other words they would be off task let's say 20% of the time.
> A. Um-hum.
> Q. Would that affect your testimony?
> A. Well, it would mean that such a person would have trouble sustaining those jobs or any job over time.

(Tr. 198).

Significantly, Mr. Finnerty never found that Williams would be off task 20% of the time.  Rather, he found that Williams was moderately limited in his ability to complete a normal work day or work week without interruption from psychologically based symptoms.  A  VE's testimony must be based on a hypothetical question that accurately portrays the claimant's physical and mental impairments.  *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  Additionally, a hypothetical question need only include those impairments that are accepted by the ALJ, and may exclude impairments that the ALJ reasonably discredited.  *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994)  There is no evidence in this case that Williams would be off task 20% of the time, and the ALJ made no such finding.  Therefore, the VE's testimony set forth above is immaterial.

## B. The ALJ Correctly Found that Williams Impairments Do Not Meet a Listing

13

Williams bears the burden of proof to establish that his impairments meets a Listing.  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 2007) (The burden of proof lies with the claimant at steps one through four of the disability evaluation process.)  In this case, Williams argues that his impairments meet the requirements of Listing 12.05C, 20 C.F.R. Pt. 404, Subpt P, App. 1, § 12.05C (mental retardation). Williams is incorrect.

Listing 12.05 provides in part:

Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22 [with] . . . .

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Assuming *arguendo* that Williams can meet the requirements of paragraph C, he has failed to establish the onset of his impairment before the age of 22 as required by the Listing.[3]  Williams does not dispute that he has failed to present this evidence. Rather, he argues that the ALJ should have insured that this evidence was obtained. As discussed *infra*, Williams was responsible for obtaining this evidence, not the ALJ. *See Trandafir v. Comm'r of Soc. Sec.*, 58 Fed. Appx. 113, 2003 WL 245341,** 2 (C.A.6 ) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986) (The ALJ does not have a heightened duty to develop the record where claimant

---

[3]The parties disagree as to whether Williams has established that he meets the requirements of paragraph C.  However, this issue need not be decided because Williams has failed to present evidence to support or demonstrate the onset of impairment before age 22.

14

is represented by counsel).  Accordingly, Williams has failed to establish that his

impairments meet the requirements of Listing 12.05C.[4]

## VII.  Decision

For the foregoing reasons, the decision of the Commissioner is supported by

substantial evidence.  Accordingly, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/*Nancy A. Vecchiarelli*
Nancy A. Vecchiarelli
U.S. Magistrate Judge

Date: August 14, 2009

_____

[4]In the conclusion to Plaintiff's Brief on the Merits, Williams states that this case should be remanded to determine whether Williams' IQ scores constitute an organic mental disorder as set forth in Listing 12.02, 20 C.F.R. Pt. 404, Subpt P, App. 1, § 12.02.  Williams did not brief this argument nor present any evidence in support.  Thus, the Court need not address it.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *Erhart v. Secretary of Health and Human Servs.*, 989 F.2d 534, 537 n.5 (7th Cir. 1992) (applying waiver rule because judges need not devote time to "discussion of argument, raised if at all, 'in a very opaque manner.'").